People v Mattison (2018 NY Slip Op 04569)





People v Mattison


2018 NY Slip Op 04569


Decided on June 20, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 20, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
JOSEPH J. MALTESE, JJ.


2015-03631
 (Ind. No. 228/12)

[*1]The People of the State of New York, respondent,
v
Ernest Mattison, appellant.


Seymour W. James, Jr., New York, NY (Karen M. Kalikow and Mary Beth Peppito of counsel), for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, and William H. Branigan of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Deborah Stevens Modica, J.), rendered April 23, 2015, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
Cecil Schiff (hereinafter the decedent) was murdered in September 1980 during a robbery of his apartment. With no eyewitnesses and no match to latent fingerprints that were recovered from the crime scene, the investigation stalled. In 2008, a detective with the New York City Police Department's Latent Print Unit randomly selected the case for fingerprint analysis, and determined that the defendant's fingerprints matched three fingerprints recovered from a jewelry box and two other boxes found in the decedent's bedroom. Further investigation revealed that the defendant, who was a 17-year-old high school student at the time of the murder, was absent from school on the day of the murder. The defendant was arrested and indicted in 2012, more than 31 years after the crime was committed. After a jury trial, he was found guilty of murder in the second degree.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt of murder in the second degree beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
We agree with the Supreme Court's determination to deny the defendant's motion to dismiss the indictment based on preindictment delay. The Court of Appeals has articulated the following factors to consider when determining whether a defendant's right to a speedy trial or due [*2]process right to prompt prosecution has been violated: (1) the extent of the delay, (2) the reason for the delay, (3) the nature of the underlying charge, (4) whether there has been an extended period of pretrial incarceration, and (5) whether there is any indication that the defense has been prejudiced by the delay (see People v Decker, 13 NY3d 12, 14-15; People v Romeo, 12 NY3d 51, 55; People v Taranovich, 37 NY2d 442, 445; see also Barker v Wingo, 407 US 514). An unjustifiable delay in commencing prosecution may require dismissal even though no actual prejudice to the defendant is shown (see generally People v Lesiuk, 81 NY2d 485, 490). However, a determination made in good faith to delay prosecution for sufficient reasons will not deprive the defendant of due process even though there may be some prejudice to the defendant (see People v Vernace, 96 NY2d 886; People v Singer, 44 NY2d 241, 254). "Where there has been [an] extended delay, it is the People's burden to establish good cause" (People v Decker, 13 NY3d at 14).
Here, the pre-indictment delay of more than 31 years was extensive (see People v Romeo, 47 AD3d 954, affd 12 NY3d 51). However, a significant amount of the delay was due to a lack of evidence identifying a viable suspect. After the defendant's fingerprints were matched to the fingerprints recovered from the three boxes in the decedent's bedroom, further investigation was conducted. The People had a good-faith basis to wait until they had sufficient evidence to arrest the defendant. Accordingly, we agree with the Supreme Court's determination that the People met their burden of demonstrating good cause for the delay (see People v Decker, 13 NY3d 12; People v Metellus, 157 AD3d 821; People v Allen, 134 AD3d 730). The reasons for the delay establishing the People's good cause, the nature of the crime, and the fact that there was no period of pre-indictment incarceration in connection with this matter outweigh the extent of the delay. The court appropriately balanced the requisite factors in denying the defendant's motion to dismiss the indictment (see People v Decker, 13 NY3d 12; People v Robinson, 82 AD3d 1269).
The defendant contends that the Supreme Court erred in responding to a jury note requesting that the court reread and explain its instruction regarding the evaluation of competing inferences of guilt and innocence. Specifically, the defendant contends that the court simply reread, and did not explain, its original instruction on the subject. This contention is without merit. A trial court is vested with discretion in framing its response to a jury note because it is in the best position to evaluate the jury's request in the first instance, but the court's response must be meaningful (see People v Malloy, 55 NY2d 296, 302). "The factors to be evaluated are the form of the jury's question, which may have to be clarified before it can be answered, the particular issue of which inquiry is made, the supplemental instruction actually given and the presence or absence of prejudice to the defendant" (People v Malloy, 55 NY2d at 302).
Here, the instruction given in response to the jury's inquiry was not inadequate. In determining the most appropriate way to handle the jury's request, the Supreme Court took the view that the original charge given was neither confusing nor inaccurate (cf. People v Lourido, 70 NY2d 428, 435), and should not be further clarified, and that any attempt to alter the charge after the already extensive jury deliberations would only lead to confusion (see People v Malloy, 55 NY2d at 303). Moreover, after the original charge was repeated to the jury, the jurors gave no indication that their concern had not been satisfied (see People v Williams, 150 AD3d 902; cf. People v Bleau, 276 AD2d 131; People v Pyne, 223 AD2d 910; People v Ciervo, 123 AD2d 393). Accordingly, the court's response to the jury note was meaningful.
The defendant contends that he was deprived of a fair trial by the Supreme Court's improper admission of hearsay evidence. This contention is unpreserved for appellate review (see CPL 470.05[2]), and, in any event, any error does not require reversal.
The defendant's contentions regarding alleged prosecutorial misconduct during summation are partially unpreserved for appellate review (see CPL 470.05[2]), and, in any event, without merit.
LEVENTHAL, J.P., COHEN, MILLER and MALTESE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court